UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM CRUMP, JR.,

    Plaintiff,

v.                                               Case No. 2:08-cv-170
                                                     HON. ROBERT HOLMES BELL

DENVER MCBURNEY, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff William Crump, Jr., is a former inmate who was discharged from prison after he filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager Denver McBurney, Warehouse Staff Heidi Swajanen, and Prison Guard Harlin LaVigne. Plaintiff's complaint alleges that on October 2, 2007, Plaintiff demonstrated the knowledge and sincerity of belief necessary for a Kosher diet. On October 4, 2007, Plaintiff was recommended for a Kosher diet by Chaplain Snyder, Assistant Warden Linda Tripley and Warden Greg McQuiggin. This recommendation was sent to Dave Burnett, Special Activities Coordinator. On October 19, 2007, Plaintiff was informed that he would be transferred soon in order to receive a Kosher diet. On October 26, 2007, Plaintiff was transferred to the Alger Maximum Correctional Facility (LMF) so that he could participate in the Kosher meal program.

        On December 14, 2007, Plaintiff ordered several boxes of Smith Brothers Cough Drops. This was the second time that Plaintiff had ordered these cough drops. On December 17, 2007, Defendant LaVigne stopped by Plaintiff's cell and stated, "I'm coming for that kosher you fake

ass jew. I'm going to make your time here as miserable as possible." Defendant LaVigne later told Plaintiff that he had friends all around the prison and that Plaintiff would be off the Kosher diet in a few days time. Defendants Swajanen then wrote a Notice of Intent on Plaintiff stating that he had purchased five boxes of Smith Brothers Cough Drops, which are not Kosher food items. Defendant Swajanen also contacted the kitchen and submitted a request to remove Plaintiff from the Kosher meal program. Plaintiff was removed from the Kosher meal program on December 19, 2007, without first receiving a hearing. On December 20, 2007, Defendant McBurney held a hearing during which Plaintiff informed him that over the counter medications are not considered food items and that he had purchased the same cough drops in November without being removed from the Kosher meal program. However, Defendant McBurney upheld the Notice of Intent.

Plaintiff filed a grievance regarding his removal from the Kosher meal program on December 20, 2007. Plaintiff's grievance was denied at step I, so he filed a step II appeal. In the step II response, Warden David Bergh found that cough drops are considered an over the counter personal care product, and are not a food product. Therefore, Warden Bergh ordered that Plaintiff be placed back on the Kosher meal program. Plaintiff was denied Kosher meals for a total of thirty-nine days. Plaintiff seeks compensatory and punitive damages.

Presently before the Court are the Plaintiff's and Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.*

at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendants state that Defendant Swajanen is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances

---

[1]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants state that Plaintiff failed to file a grievance regarding his allegations against Defendant Swajanen. In support of this assertion, Defendants offer a copy of grievance No. LMF 07-12-6438-17i, which was filed by Plaintiff on this matter and does not name Defendant Swajanen. (*See* Defendants' Exhibit E.) In addition, Defendants offer a copy of a grievance inquiry, which shows that Plaintiff filed three grievances during the relevant time period. (*See* Defendants' Exhibit G.) Finally, Defendants offer copies of grievance Nos. LMF 07-12-6437-17b and LMF 07-12-6389-05b, which allege retaliatory and derogatory comments by Defendant LaVigne and the alleged denial of proper yard time by Defendants McBurney and LaVigne, as well as other officials. (*See* Defendants' Exhibits H and I.) A review of the record reveals that Defendants have adequately demonstrated that Plaintiff failed to exhaust his administrative remedies with regard to Defendant Swajanen.

Defendants also state that Defendant LaVigne is entitled to summary judgment because he was not involved in Plaintiff's removal from the Kosher diet program. As noted above, Plaintiff alleges that on December 17, 2007, Defendant LaVigne told him that he would be "coming for that kosher . . ." and would make Plaintiff's life as miserable as possible. Defendant LaVigne

also allegedly told Plaintiff that he had friends all over the prison and that Plaintiff would be off the Kosher diet within a few days. Plaintiff was taken off the Kosher diet on December 19, 2007. Plaintiff states that this indicates that Defendant LaVigne was behind his removal from the Kosher meal program. Defendants contend that this conclusion is entirely conclusory and unsupported by any specific factual allegations.

In support of this claim, Defendants offer the affidavit of Defendant LaVigne, in which he denies threatening Plaintiff with removal from the Kosher diet plan, and states that he had no knowledge of the Notice of Intent written by Defendant Swajanen regarding Plaintiff's use of non-Kosher cough drops. (*See* Defendants' Exhibit J, ¶¶ 5-6.) Defendants also offer the affidavit of Defendant McBurney, who attests that during the hearing on the Notice of Intent, Plaintiff stated that he had spoken to Nurse Thompson and had been advised that the cough drops were Kosher items. Defendant McBurney attests that he contacted Nurse Thompson and was informed that no such conversation ever took place. Defendant McBurney found that Plaintiff had purchased and possessed non-Kosher items and that Plaintiff, by participating in the Kosher Meal Program, was responsible for knowing which items are Kosher. Plaintiff was removed from the Kosher Meal Program for his violation. (*See* Defendants' Exhibit C, ¶¶ 3-6.) Defendants also attach a copy of the administrative hearing report by Defendant McBurney which supports his affidavit. (*See* Defendants' Exhibit C-1.)

Defendant Swajanen attests that she wrote the Notice of Intent on Plaintiff because he was ordering an excessive amount of cough drops and had in the past. Defendant Swajanen states that cough drops fall in the category of "consumable" items, and that based on her research, dietary laws state that non-Kosher items are only allowable for consumption if one is seriously ill. Defendant Swajanen notes that the prisoner store carries Kosher approved cough / cold lozenges as

well as non-Kosher items. Defendant Swajanen contacted Chaplain Riley and informed him of the violation of policy. (*See* Defendants' Exhibit B, ¶¶ 7-9.)

Defendants also offer copies of major misconduct hearing records for two threatening behavior tickets from December of 2007. Included with this record is Plaintiff's "statements for hearing investigation" which indicate that Plaintiff had "issues" with Defendant LaVigne since 1997. Plaintiff stated that Defendant LaVigne was a "coward with homosexual tendencies and needs to go to a gay bar or find him a man to satisfy these homosexual feelings." Plaintiff also stated that Defendant LaVigne would get what he has coming and that Defendant LaVigne should have left him alone. (*See* Defendants' Exhibit J-1, p. 6.) In addition, Plaintiff stated that as a result of a misconduct by Defendant LaVigne in 1997, he was kept in administrative segregation for 10 years. Furthermore, Plaintiff admitted that he had tried to assault Defendant LaVigne and would get him "sooner or later." (*See* Defendants' Exhibit J-2, p. 4.)

Defendants assert that the evidence shows that Plaintiff was removed from his Kosher diet because of his failure to adhere to the tenets of that diet. In addition, Defendants contend that, based on the evidence, the reasonable inference is that Plaintiff was angry with Defendant LaVigne and saw an opportunity to get back at him when he was removed from the Kosher meal plan by harassing Defendant LaVigne with frivolous litigation.

Plaintiff has failed to file a response to the motion for summary judgment. However, Plaintiff admits that he purchased the cough drops. In addition, Defendant Swajanen attests to writing the Notice of Intent based on the purchase and her understanding of the requirements of a Kosher diet. In the opinion of the undersigned, Plaintiff's claim that Defendant LaVigne was responsible for his removal from the Kosher diet is conclusory and unsupported by the evidence. A party cannot be held liable under Section 1983 absent a showing that the party personally

- 8 -

participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). The record in this case does not support such a finding. Therefore, the undersigned recommends that Defendant LaVigne be granted summary judgment in this case.

Defendants also assert that Defendant McBurney is entitled to qualified immunity because his conduct was objectively reasonable in light of clearly established federal law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

Defendants state that Defendant McBurney is entitled to summary judgment on Plaintiff's claim that the denial of a Kosher diet violated his First Amendment right to freely exercise his religious beliefs. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example, Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See, for example, Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See, generally, Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or

absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Defendants note that Defendant McBurney conducted an administrative hearing and upheld the Notice of Intent that resulted in Plaintiff's temporary removal from the Kosher meal program. The applicable prison policy provides that a prisoner approved to eat from a religious menu shall have that approval rescinded if he eats or possesses any food item that violates a tenet of his designated religion. MDOC Policy Directive 05.03.150, ¶ W (effective September 20, 2007). Defendants rely on an unpublished Sixth Circuit opinion, in which an Ohio inmate had his Kosher diet privileges revoked after he stole and purchased non-Kosher food items. *Russell v. Wilkinson*, 79 Fed. Appx. 175, 177 (6th Cir. 2003) (*also see* Defendants' Exhibit K). In *Russell*, the Sixth Circuit stated:

> The regulations provide that the prison warden has the authority to make a final decision on requests for religious accommodations. As Russell was denied kosher meals only after he stole and purchased non-kosher food items, Russell's conduct demonstrates that he did not follow the tenants of his religious beliefs. As the denial of kosher meals was based on Russell's obvious actions in not observing the kosher food requirements outside meals, Tate had a legitimate penological interest in discontinuing Russell's request. That legitimate penological interest concerns the maintenance of prison discipline in the facility.

*Id.*

For the reasons set forth by the court in *Russell*, the undersigned recommends that Defendant McBurney be granted summary judgment on Plaintiff's First Amendment free exercise claim.

Plaintiff's complaint also appears to be asserting a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. Section 2000cc-1 states:

(a) General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b).

Defendants cite *Berryman v. Granholm*, 2007 WL 2259334 (E.D. Mich. 2007), in which the court for the Eastern District of Michigan found that inmates' temporary removal from a kosher diet for purchasing non-kosher food items from the prisoner store did not violate the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA). In so holding, the court found that the inmates had not demonstrated that this removal substantially burdened their religious exercise. In addition, the court concluded that even if the temporary terminations did substantially burden religious exercise, the terminations furthered a compelling

- 14 -

governmental financial interest in ensuring that kosher food is served only to those inmates who sincerely need it for religious reasons. *Berryman*, 2007 WL 2259334 at *3. In *Berryman*, the court stated that the policy, which is the same policy which is at issue in this case, imposed the least restrictive burden on inmates caught purchasing non-kosher food from the prison store because such inmates are not banned permanently from participation in the program, but only for 60 days for the first violation and one year for subsequent violations, with the opportunity to reapply after the specified time period. *Id.* In this case, as in *Berryman*, Plaintiff was found to have purchased non-kosher items from the prisoner store. Plaintiff appealed the decision through the grievance process and was placed back on a kosher diet after 39 days. For the reasons stated by the court in *Berryman*, the undersigned recommends that Defendant McBurney be granted summary judgment on Plaintiff's RLUIPA claim.

Plaintiff claims that his removal from the kosher meal program violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Plaintiff claims that Defendant Swajanen singled him out for scrutiny of his store order and that over the counter medications have never been considered a food product, so that the order of cough drops could not have violated a kosher diet. However, in her affidavit, Defendant Swajanen attests that she wrote the Notice of Intent on Plaintiff because he was ordering an excessive amount of cough drops and had in the past. Defendant Swajanen states that cough drops fall in the category of "consumable" items, and that based on her research, dietary laws state that non-Kosher items are only allowable for consumption if one is seriously ill. Defendant Swajanen notes that the prisoner store carries

Kosher approved cough / cold lozenges as well as non-Kosher items. Defendant Swajanen contacted Chaplain Riley and informed him of the violation of policy. (*See* Defendants' Exhibit B, ¶¶ 7-9.) Therefore, the record shows that Defendant Swajanen did not write the Notice of Intent on Plaintiff because of any improper motive. Moreover, the fact that there are both kosher and non-kosher cough drops / cold lozenges suggest that the consumption of such could violate a kosher diet. Consequently, the undersigned finds that Plaintiff's equal protection rights were not violated by Defendant McBurney's conduct in upholding the Notice of Intent.

Finally, Plaintiff claims that his temporary removal from the kosher meal program violated his substantive due process rights. The Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard, and, thus, he fails to state a claim that his substantive due process rights were violated.

Moreover, to the extent that Plaintiff is intending to assert a procedural due process claim, the record shows that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the

procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). As noted above, Plaintiff had a hearing on the Notice of Intent, during which he was able to present his side of the issue. In addition, Plaintiff filed a grievance and appeal, and was successful in getting reinstated on the kosher meal plan.

As noted above, Defendants have shown that there is no genuine issue of material fact that Defendant McBurney's conduct did not violate Plaintiff's constitutional rights. Therefore, he is entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #14) be granted, that Plaintiff's Motion for Summary Judgment (docket #11) be denied, and this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 11, 2009